FILED
CLERK

February 24, 2023

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MONICA LUNA,

                            Plaintiff,

      -against-

J.S. HELD LLC, and
J.S. HELD ENGINEERING SERVICES PLLC,


                        Defendants.
-------------------------------------------------------------X

**MEMORANDUM
DECISION AND ORDER**
2:21-CV-03072-JMW

Raymond Nardo, Esq.
**RAYMOND NARDO, P.C.**
129 Third St
Mineola, NY 11501
*For Plaintiff Monica Luca*

Brian Pete
Dong Phuong Van Nguyen
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
77 Water St, 21st Floor
New York, NY 1005
*For All Defendants*

**WICKS,** Magistrate Judge:

      Plaintiff Monica Luna commenced this action against J.S. Held LLC and J.S. Held

Engineering Services PLLC (collectively, the "Defendants") by way of Complaint on May 28,

2021.  (DE 1.)  Therein, Plaintiff alleged violations of the Fair Labor Standards Act, 29 U.S.C.

§§ 201 *et seq*. ("FLSA"), the New York Labor Law § 190, *et seq.* ("NYLL"), and the Wage

Theft Protection Act ("WTPA").  (*Id.*)  Additionally, Plaintiff brought claims for discrimination

under Title VII of the Civil Rights Act, §2000(e), *et seq.* and the New York State Human Rights

Law ("NYSHRL").  (*Id.*)

Before the Court is the parties' application for approval of a Wage and Hour Settlement

Agreement and Release ("Settlement Agreement"), settling Plaintiff's wage and hour claims only,[1]

in accordance with *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199 (2d Cir. 2015). (DE

21.) For the reasons that follow, the motion for settlement approval is denied, with leave to renew.

## I.   BACKGROUND

Plaintiff alleges she worked as a Staff Accountant from July 19, 2018, to January 27,

2020. (DE 1.) During this time, her duties included, *inter alia*, performing bank reconciliations,

amortizing pre-paid rents, insurance, and other expenses pursuant to an amortization schedule,

and depreciating fixed assets according to a depreciation schedule. (*Id.*) Plaintiff alleges to have

worked in excess of 40 hours per week, and despite being non-exempt under the FLSA and

NYLL, Plaintiff was paid "on a salary basis," receiving $65,000 per year. (*Id.*) Defendants also

allegedly failed to provide Plaintiff with proper wage notices. (*Id.*)

Plaintiff further alleges that her direct supervisors Alicia Fiske (Accounting Manager),

and Nicole DeGrace (Collections Supervisor), often engaged in degrading conversation on the

bases of race, national origin, gender, and sexual orientation. (*Id.*) Plaintiff claims that she

complained about her supervisors' discriminatory conduct and shortly thereafter, she was

terminated. (*Id.*)

Defendants expressly deny failing to pay Plaintiff overtime wages or provide wage

notices. (DE 21.) Specifically, J.S. Held Engineering Services denies ever employing Plaintiff

and J.S. Held LLC denies that Plaintiff was misclassified as exempt. (*Id.*) Defendants argue that

Plaintiff was properly paid on a salary basis and that Plaintiff falls within an exemption of the

FLSA. (*Id.*)

---

[1] The settlement of Plaintiff's non-wage and hour claims for discrimination and retaliation are subject to a
separate agreement. (DE 21 at 2 n.1.)

On January 3, 2022, this Court referred the parties to mediation.  (Electronic Order dated Jan. 3, 2022.)  On March 7, 2022, the parties mediated the case, settling one day later with the help of the Mediator.[2]  (DE 21.)  On March 22, 2022, all parties signed a consent form, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, granting this Court the power to conduct all proceedings in this matter and enter final judgement.  (DE 20.)  On April 2, 2022, the parties submitted the instant joint application for settlement approval.  (DE 21.)

## II.   STANDARD FOR APPROVING FLSA SETTLEMENTS

Federal Rule of Civil Procedure 41 provides, in relevant part, that:

Subject to . . . any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:

    (i)  a notice of dismissal before the opposing party serves either an answer of a motion for summary judgment; or

    (ii) a stipulation of dismissal signed by all parties who have appeared.

Fed. R. Civ. P. 41(a)(1)(A).

In *Cheeks*, the Second Circuit held that the FLSA is an "applicable federal statute" under Rule 41 because of "the unique policy considerations underlying" the act.  796 F.3d at 206.  Such considerations include the laudable aim of "'extend[ing] the frontiers of social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.'"  *Id*. (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)).  Accordingly, in this Circuit, Rule 41's "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect."  *Id*.

"Generally, if the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved" by the reviewing court.  *Ceesae v. TT's Car Wash*

---

[2] The Court gratefully acknowledges the work Mediator Deborah Reik.

*Corp.*, 17 CV 291 (ARR) (LB), 2018 WL 1767866, at *2 (E.D.N.Y. Jan. 3, 2018) (internal

quotation marks and citation omitted) *report and recommendation adopted by* 2018 WL 741396

(Feb. 7, 2018).  In reviewing the reasonableness of the proposed settlement, courts consider the

totality of the circumstances, including relevant factors such as:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement
> will enable the parties to avoid anticipated burdens and expenses in establishing
> their respective claims and defenses; (3) the seriousness of the litigation risks faced
> by the parties; (4) whether the settlement agreement is the product of arm's-length
> bargaining between experienced counsel; and (5) the possibility of fraud or
> collusion.

*Wolinsky v. Scholastic Inc.*¸ 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks

and citations omitted) ("*Wolinsky* Factors").  Factors weighing *against* settlement approval

include:

> (1) the presence of other employees situated similarly to the claimant; (2) a
> likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-
> compliance by the same employer or others in the same industry or geographic
> region; and (4) the desirability of a mature record and a pointed determination of
> the governing factual or legal issue to further the development of the law either in
> general or in an industry or in a workplace.

*Id*. (internal quotation marks and citations omitted).

Even if an application of the *Wolinsky* Factors demonstrates that the agreement is fair and

reasonable, the court must also consider whether the settlement "complies with the Second

Circuit's admonitions as articulated in *Cheeks*."  *Ezpino v. CDL Underground Specialists, Inc.*,

14-CV-3173 (DRH) (SIL), 2017 WL 3037483, at *1 (E.D.N.Y. June 30, 2017) (citation

omitted), *report and recommendation adopted by* 2017 WL 3037406 (E.D.N.Y July 17, 2017).

Specifically, courts should guard against "highly restrictive confidentiality provisions,"

overbroad releases that "would waive practically any possible claim against the defendants,

including unknown claims and claims that have no relationship whatsoever to wage-and-hour

4

issues," and "a[ny] provision that would set the fee for plaintiff's attorney . . . without adequate documentation." *Cheeks*, 796 F.3d at 206 (citation omitted).  In association with the final admonition, courts must also ensure that any attorney's fees provided for in the agreement are reasonable.  *See* 29 U.S.C. § 216(b) ("The Court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a *reasonable* attorney's fee to be paid by the defendant, and costs of the action."); *see also Ceesae*, 2018 WL 1767866 at *2 (noting that courts engaging in a *Cheeks* review must "evaluate[] the reasonableness of any attorney's fees included in the proposed settlement") (citing 29 U.S.C. § 216(b)).

Against this backdrop, the Court reviews the proposed Settlement Agreement and accompanying motion.

### III.   <u>DISCUSSION</u>

After discovery, a full day of mediation with a court-appointed mediator, and two days of negotiations, the parties achieved a proposed Settlement Agreement.  (*See generally* DE 21-1.) Pursuant to the Settlement Agreement, Plaintiff's wage and hour claims, under the FLSA and NYLL, would be dismissed with prejudice against Defendants, who would pay Plaintiff $15,000 in valid consideration.  (*Id.*)  Plaintiffs' counsel would receive $5,000—one-third of the settlement amount—for attorney's fees and costs incurred.  (*Id.*)

For the reasons set forth below, the Court finds that the Settlement Agreement and its accompanying motion contain several deficiencies, including a problematic non-disparagement provision and release provision, and the failure to provide for Plaintiff's range of possible recovery.  As such, these deficiencies leave no alternative but for the Court to deny the Settlement Agreement pursuant to *Cheeks*.

### A. Bifurcated Settlement

As a preliminary matter, the Court considers whether the parties' bifurcated settlement is permissible. The Settlement Agreement submitted to the Court for review only pertains to Plaintiff's wage and hour claims. (DE 21 at 2 n.1.) Separately, the parties have settled Plaintiff's non-wage and hour claims for discrimination and retaliation pursuant to a second agreement ("Non-FLSA Settlement Agreement"). (*Id.*) According to the parties, the Non-FLSA Settlement Agreement contains a general release of claims, other than wage and hour claims. (*Id.*) The parties submit that this bifurcated settlement does not run afoul of *Cheeks*.

Courts in this Circuit regularly accept bifurcated settlement agreements where the parties' FLSA claims undergo a *Cheeks* review while their non-FLSA claims are resolved by a separate private agreement. *See Gallardo v. PS Chicken Inc.*, 285 F. Supp. 3d 549, 553 (E.D.N.Y. 2018) (finding that the "mechanism" of a bifurcated settlement of FLSA and non-FLSA claims "does not run afoul of *Cheeks*"); *Yunda v. SAFI-G, Inc.*, No. 15 CIV. 8861 (HBP), 2017 WL 1608898, at *2 (S.D.N.Y. Apr. 28, 2017) ("I conclude that such a bifurcated settlement agreement is permissible"); *Chowdhury v Brioni Am., Inc.*, No. 16 CIV. 344 (HBP), 2017 WL 5953171, at *5 (S.D.N.Y. Nov. 29, 2017) ("Judges in this District routinely approve bifurcated settlement agreement[s]. . .") (quotes omitted).[3] Bifurcated settlements are especially common where, as is here, the private settlement agreement concerns state law claims of discrimination and retaliation. *See e.g.*, *Pavone v. Diesel U.S.A., Inc.*, No. 21 CIV 5219 (PAE), 2022 WL 1177344,

---

[3] The Second Circuit has not directly ruled on the issue of whether bifurcated settlements are permissible (*see Fisher v. SD Prot. Inc.*, 948 F.3d 593, 607 n.12 (2d Cir. 2020) ("We do not have such a bifurcated settlement before us and thus we do not decide whether the settlement of state law claims paired with FLSA claims requires judicial approval"), but it has recognized that many courts in this district have permitted bifurcated settlements. *Id.* (citing *Gallardo*, 285 F. Supp. at 553; *Feliz v. Parkoff Operating Corp.*, No. 17-cv-7627 (HBP), 2018 WL 1581991, at *3 (S.D.N.Y. Mar. 27, 2018)).

at *2 (S.D.N.Y. Mar. 2, 2022) ("The Court further finds that the separate settlement of [Plaintiff's] state law discrimination claims does not [require] judicial approval"); *Chowdhury*, 2017 WL 5953171, at *5 ("Plaintiffs' discrimination claims, unlike their FLSA claims, do not require judicial approval"); *Doe v. Solera Cap. LLC*, No. 18 CIV. 1769 (ER), 2021 WL 1725734, at *1 (S.D.N.Y. Mar. 3, 2021) (approving bifurcated settlement, one resolving wage and hour claims and the other resolving claims for discrimination, hostile work environment and retaliation).

Accordingly, the Court finds that the Parties' choice to bifurcate settlement in this matter does not, *per se*, prevent court approval.

**B. Overbroad Non-Disparagement Clause**

The non-disparagement clause contained within the Settlement Agreement is too expansive for it to receive *Cheeks* approval. *See* 796 F.3d at 207. By barring any "statements (oral, written or otherwise) that defame, disparage, demean, or in any way criticize the personal or business reputation of Defendants", the non-disparagement clause effectively prevents Plaintiff from making any negative comments about Defendants without the requisite carve out for truthful statements. (*See* DE 21-1 at Section 6.)

Non-disparagement provisions may not bar a plaintiff from making any negative comments about a defendant without including a carve-out for truthful statements regarding the plaintiff's experience litigating her case. *Gallagher v. Mt. Mortg. Corp.*, No. 22-CV-0715 (RPK) (JMW), 2022 U.S. Dist. LEXIS 212814, at *17-20 (E.D.N.Y. Nov. 22, 2022) (citing *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp.3d 170, 181 (S.D.N.Y. 2015); *see also Snead v. Interim Healthcare of Rochester, Inc.*, 286 F. Supp. 3d 546, 553 (W.D.N.Y. 2018) (approving a settlement agreement that specifically stated "[a]ny party is allowed to make truthful statements

7

related to or concerning the Action"); *Cortes v. New Creators, Inc.,* 15-CV-5680, 2016 WL 3455383, at *4 (S.D.N.Y. June 20, 2016) ("[A]lthough the Agreement contains a non-disparagement provision, it includes the requisite 'carve-out' for truthful statements about plaintiffs' experience litigating this case.") (citation omitted).  Courts in the Second Circuit give merit to non-disparagement clauses with sufficient carve-outs, while rejecting those which are overbroad.  *See e.g.*, *Snead*, 286 F. Supp. 3d at 553 (approving a settlement including a non-disparagement provision with a carve-out for truthful statements); *Geskina v. Admore Air Conditioning Corp.,* No. 16 Civ. 3096 (HBP), 2017 WL 1743842, at *3 (S.D.N.Y. May 3, 2017) ("Because [the non-disparagement clause] includes a carve-out for truthful statements, it is permissible").

Overbroad non-disparagement provisions are at odds with public policy as they have the potential to silence FLSA plaintiffs by preventing the spread of information.  *Felix v. Breakroom Burgers & Tacos*, No. 15 CIV. 3531 (PAE), 2016 WL 3791149, at *7-9 (S.D.N.Y. Mar. 8, 2016).

The clause contained within this Settlement Agreement does not provide any "carve-out for truthful statements about plaintiffs' experience litigating their case."  *See Lopez*, 96 F. Supp. 3d at 180.  It solely provides that "[t]he parties shall not disparage, defame, slander, call into disrepute or take any action that could reasonably be expected to adversely affect the personal or professional reputation of one another, their successors or assigns."  (DE 9-1 at 7.)  In effect, this "broadly bars plaintiff from making any negative comments about defendants[.]"  *Felix*, 2016 WL 3791149, at *3 (declining to approve a settlement agreement containing a non-disparagement provision that forbid "[Plaintiff] to 'negatively comment on, disparage, or call into question the business operations, policies, or conduct of Defendants,' [to] 'act in any way

8

that would likely damage Defendants' reputation, business relationships, [or] present or future business,' [and to] 'comment about Defendants to any person or entity concerning such business operations, policies or conduct except as required by law or as necessary for [Plaintiff] to defendant himself in any [proceeding]'"). Therefore, this Court cannot approve of the non-disparagement provision as it must be removed or otherwise narrowly tailored accordingly.

### C. Overbroad Release Provision

Another deficiency in this application for settlement approval is the broad release provision contained within the Settlement Agreement. In *Cheeks*, the Court "specifically cited to overbroad releases that would 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues' as highlighting the 'potential for abuse' in FLSA settlements." *Torres v. Mc Gowan Builders*, No. 18 CV 6099 (RML), 2020 WL 5369056, at *3 (E.D.N.Y. Sept. 8, 2020) (citing *Cheeks*, 796 F.3d at 206) (rejecting a FLSA settlement agreement that included, *inter alia*, a general release of claims). Accordingly, Courts in this circuit have routinely rejected FLSA settlement agreements containing such general releases. *Id*.

In relevant part, the Settlement Agreement contains the following release:

> **a. Plaintiff.** Plaintiff. . . hereby knowingly and voluntarily releases and covenants that she will dismiss the Action with prejudice against Defendants, and covenants not to sue Defendants. . . for any and all past and present matters, claims, demands, and causes of action, including but not limited to those for unpaid wages, untimely wages, overtime wages, failure to furnish accurate wage statements, liquidated damages, penalties, attorneys' fees and costs, and interest under the FLSA or NYLL, which Plaintiff has or might have, whether known or unknown, related to her work and employment with Defendants.

(DE 21-1 at Section 2.) By virtue of the language "any and all past and present matters" and "including but not limited to" wage and hour claims, the Plaintiff unilaterally agrees to release a

9

broad range of claims that Plaintiff could potentially bring against the Defendant.  The language of this provision goes far beyond terminating the instant litigation.  Similar use of "all claims" and "including, but not limited to" language when used in wage and hour settlement agreements has been found to be overbroad.  *See Gonzales v. Lovin Oven Catering of Suffolk, Inc.*, No. 14-CV-2824 SIL, 2015 WL 6550560, at *3 (E.D.N.Y. Oct. 28, 2015) ("This 'known or unknown' and 'including but not limited to' phrasing amounts to a general release that offends the FLSA"); *see, e.g., Khan v. Dunwoodie Gas Station, Inc.*, No. 19-CV-5581 (KMK), 2020 WL 1166180, at *4 (S.D.N.Y. Mar. 10, 2020); *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016).  In light of such a broad release, settlement approval cannot be granted.

### D.  Failure to Provide Plaintiff's Range of Possible Recovery

Another barrier to approval is that the parties neglect to provide the Plaintiff's possible range of recovery.  *See Wolinsky*, 900 F. Supp. at 335 (listing "plaintiff's range of possible recovery" as the first factor a court should consider).  The Settlement Agreement provides for a total payment of $15,000, two-thirds of which is to be paid to the Plaintiff as compensation for the alleged unpaid overtime wages and WTPA penalties.  (DE 21.)  Yet, neither party provides any calculations for determining how many hours the Plaintiff was denied overtime wages to explain the Plaintiff's potential recovery.

In her Complaint, Plaintiff asserts that she was formerly employed by Defendants as a Staff Accountant from July 19, 2018, to January 27, 2020.  (DE 1.)  Plaintiff alleges that she was incorrectly compensated with an annual salary of $65,000, as she could have recovered "significant sums of owed overtime wages" for hours worked in excess of 40 hours per week.  (*Id* at 3.)  However, the Settlement Agreement merely indicates that the total sum "reflects all monies allegedly owed" to Plaintiff.  (DE 21.)

In performing a *Cheeks* review, the objective of the court is to protect the plaintiff from potential abuse in settlement. *Cheeks*, 796 F.3d at 206.   In order for the court to properly evaluate the merits of a proposed settlement, each party must provide the court with estimates of the number of hours worked or applicable wage. *See Lopez,* 96 F. Supp. 3d at 176 (finding the court has "no sense" of how the parties arrived at the maximum recover figures where the parties did not provide the Court with each party's estimate of the number of hours worked or the applicable wage") (internal quotes omitted); *Douglas v. Allied Universal Sec. Servs*., 371 F. Supp. 3d 78, 83 (E.D.N.Y. 2019) ("To indicate the range of recovery, a plaintiff must at least indicate 'each party's estimate of the number of hours worked or the applicable wage'") (quoting *Lopez*, 96 F. Supp. at 176)).   A plaintiff's maximum possible recovery, and the basis for that estimate, is one of the categories of information minimally required in order for the Court to evaluate the bona fides of the dispute. *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187 (AJN), 2015 WL 7871036, at *1 (S.D.N.Y. Dec. 3, 2015).   "A plaintiff can show the range of recovery based on, *inter alia*, facts alleged in the Complaint or revealed through discovery." *Li v. HLY Chinese Cuisine Inc.*, 596 F. Supp. 3d 439, 446 (E.D.N.Y. 2022).   "Without some proof of the parties' calculations, the Court cannot find that the range of the plaintiff's recovery is reasonable." *Narvaez v. Black Label Salon 25 Corp.*, No. 20 CIV. 4465 (ER), 2021 WL 1118383, at *1 (S.D.N.Y. Feb. 1, 2021).

Here, the undersigned cannot properly evaluate the merits of the proposed settlement as the parties' conclusion regarding the settlement amount is not supported by any data.   Without an estimate of the number of hours worked or calculation of the Plaintiff's possible range of recovery, the Court's ability to evaluate the merits of the Settlement Agreement is ultimately impossible. *See Tung v. Jade Spoon Asian Cuisine Inc.*, No. 21 CIV. 10651 (AEK), 2022 WL

1315612, at *2 (S.D.N.Y. May 3, 2022) ("[T]he Cheeks Application fails to adequately explain Plaintiff's calculations for potential recovery, which makes it impossible for the Court to evaluate the merits of the proposed settlement").  Without Plaintiff and Defendants' estimates of Plaintiff's possible range of recovery, the Court cannot find that the settlement amount is reasonable.  *See Narvaez*, 2021 WL 1118383 at *1; *Rosario v. EMZ Sols. LLC*, No. 18-CV-3297 (FB) (CLP), 2019 WL 13159569, at *12 (E.D.N.Y. Nov. 14, 2019) (finding it "impossible for the Court to render an opinion on the fairness of the proposed settlement" where the parties did not provide the court with specific calculations or how the settlement award compares to plaintiffs' maximum potential recover if successful on all claims); *cf. Lee v. Samiti Tech. Inc.*, No. 21-CV-1032 (CBA) (TAM), 2021 WL 7906558, at *3 (E.D.N.Y. Sept. 8, 2021) (finding the proposed settlement reasonable where plaintiff submitted a "best-case scenario" recovery estimate, taking into account "overtime, liquidated damages on the overtime, underpaid wages, liquidated damages on [underpaid wages], unpaid health insurance, [and] liquidated damages on [unpaid health insurance]" and Defendants submitted their competing estimate of Plaintiff's total damages).

### E.  The Remaining Factors

Although the deficiencies noted above require that the settlement as proposed not be approved, other factors weigh in favor of approval if the Settlement Agreement is revised, and the motion renewed.

*First*, the Court agrees with Plaintiff that settlement will avoid extensive litigation costs, including discovery costs related to depositions of Plaintiff and other witnesses and the corresponding costs of briefing dispositive motions.  (*See* DE 21.)  The proposed settlement would allow the parties to end this litigation, which has involved "over one year of active

litigation and negotiations, starting from the state of Plaintiff's first pre-litigation demand letter[.]" (DE 21.)

*Second*, there is a legitimate legal dispute between the parties, and settlement is a means of avoiding significant litigation risks for both.  As noted above, the Defendants argue that the Plaintiff was properly compensated and falls within an exemption of the FLSA.  (*Id.*) These legal claims are sufficient to demonstrate the *bona fide* nature of the dispute.

*Third*, the Court finds that the parties have properly engaged in bargaining at arms-length to reach the settlement agreement.  This is shown by the parties attendance at court-appointed mediation, their compromise of the heavily disputed claims present in this litigation, and the negotiations that took place over the past year.

*Fourth*, the parties and counsel negotiated in good faith and agreed upon the terms within the Settlement Agreement.  (*Id.*)  The record is devoid of any evidence of fraud or collusion by the parties.

*Fifth*, the record shows no presence of similarly situated employees.  Even if it did, the proposed Settlement Agreement would not bar their claims.  This factor does not weigh against settlement.

*Sixth*, given the time and resources spent during this year-long litigation, it is likely that Defendants will be deterred from violating the FLSA.  Additionally, because the Plaintiff is no longer employed by Defendants, it is also unlikely the claimant's individual circumstances will recur.

*Seventh*, the record offers no history previous non-compliance with the FLSA by the Defendants, nor has the Plaintiff alleged such previous non-compliance.  Thus, this factor does not weigh against settlement approval.

*Eighth*, the desirability for a mature record is weak.  Following the commencement of this action, the parties engaged in written discovery.  (DE 21.)  Specifically, the parties exchanged documents and requests for admissions.  (*Id.*)  These exchanges were used in the parties' mediation of this case.  (*See id.*)[4]

**Attorneys' Fees**

Because the parties' motion for settlement approval requires denial, Plaintiff's counsel should not be awarded attorneys' fees at this time.  *See Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) ("Under the FLSA and the NYLL, *a prevailing plaintiff* is entitled to reasonable attorneys' fees and costs") (emphasis added).  However, even if Plaintiff's motion were to be granted, Plaintiff's counsel's request for attorneys' fees should be denied.

"In an FLSA case, the Court must independently ascertain the reasonableness of the fee request."  *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 229–30 (S.D.N.Y. 2016) (citation omitted).  When considering applications for attorneys' fees, Courts employ the lodestar method.  *Kazadavenko v. Atl. Adult Day Care Ctr. Inc.*, No. 21 CV 3284 (ENV) (LB), 2022 WL 2467541, at *4 (E.D.N.Y. Apr. 14, 2022).  The lodestar calculation, which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case," "creates a presumptively reasonable fee."  *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).

Courts may also employ the "percentage of the fund" method which permits attorneys to recover a percentage of the settlement amount via a previously determined contingency fee.  *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417-19 (2d Cir. 2010).  Courts in this Circuit routinely approve of one-third contingency fees for FLSA cases.  *Lai v. Journey Preparatroy Sch., Inc.*, No. 19 CV 2970 (CLP), 2022 WL 3327824, at *3 (E.D.N.Y. May 26, 2022) ("With

---

[4]  The Court notes that the parties may need to develop the record further only to provide calculations of Plaintiff's approximate damages or a range of recovery.

this method, courts in this Circuit have routinely found an award representing one-third of the settlement amount to be reasonable"); *Kazadavenko*, 2022 WL 2467541 at *4 (collecting cases). However, even where fees are reasonable when analyzed under the percentage method, courts will additionally perform a lodestar "cross-check" and "compare the fees generated by the percentage method with those generated by the lodestar method." *Mobley v. Five Gems Mgmt. Corp.*, 17 Civ. 9448 (KPF), 2018 WL 1684343, at *4 (S.D.N.Y. Apr. 6, 2018) (citations omitted).

Critically, "[t]he fee applicant must submit adequate documentation supporting the requested attorneys' fees and costs." *Fisher*, 948 F.3d at 600; *Wolinsky*, 900 F. Supp. 2d at 336 ("In the Second Circuit, that entails submitting contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done"). "[E]ven when the proposed fees do not exceed one third of the total settlement amount, courts in this circuit use the lodestar method as a cross check to ensure the reasonableness of attorneys' fees." *Navarro Zavala v. Trece Corp.*, No. 18-CV-1382 (ER), 2020 WL 728802, at *2 (S.D.N.Y. Feb. 13, 2020) (quotation and citation omitted). In utilizing the lodestar approach, courts multiply the number of hours spent on a case by an attorney's reasonable hourly rate. *Millea*, 658 F.3d at 166.

Here, Plaintiff's counsel requests $5,000 out of the $15,000 settlement. (DE 21.) Plaintiff's counsel asserts that its filing, service, and mediation fees totaled $827, which will be deducted from its portion of the $5,000. (*Id.*)

Although this amount represents a one-third contingency fee similar to those granted by courts in the Second Circuit, the Court cannot make a determination as to whether the proposed fees are reasonable here. While Plaintiff's counsel asserts that time records show counsel fees and costs in the amount of $9,017, what is fatal to counsel's application is that there are no

contemporaneous billing records conveying the attorneys' billing rates,[5] description of services or the hours worked have been submitted.  Without this evidence, the Court cannot determine whether counsel's fee request is commensurate with the amount of time spent on this case and therefore reasonable.  Plaintiff's counsel's failure to provide this documentation necessarily warrants denial of the fee application.  *See, e.g., Fontana v. Bowls & Salads Mexican Grill Inc.*, No. 19-CV-1587 (JMA) (ARL), 2022 WL 3362181, at *8 (E.D.N.Y. Feb. 3, 2022), *report and recommendation adopted*, 2022 WL 2389298 (E.D.N.Y. July 1, 2022) ("Plaintiff has failed to provide contemporaneous billing records for attorneys involved, or even a list of attorneys involved and their billing rates. . . Accordingly, Plaintiff has failed to meet her burden of establishing the reasonableness of the fees requested and therefore the undersigned respectfully recommends that no attorney's fees be awarded");  *Lopez*, 96 F. Supp. 3d at 182 (denying application for attorneys' fees where plaintiff's counsel provided no contemporaneous billing record evidence); *Mamani v. Licetti*, No. 13-CV-7002 (KMW) (JCF), 2014 WL 2971050, at *3 (S.D.N.Y. July 2, 2014) ("The parties. . . do not provide the Court with any information to aid the Court in assessing the reasonableness of the fee award. Accordingly, the Court cannot approve the Settlement Agreement's allocation of attorney's fees at this time").

---

[5] Plaintiff's counsel states his hourly billing rate was $450 in this case, but it is not clear from the parties' motion whether any other attorney, paralegal, or legal secretary performed work on this case as well.  (*See id.*)

16

## <u>CONCLUSION</u>

For the foregoing reasons, the Court declines to approve the parties' proposed settlement. The parties are directed to submit a revised Settlement Agreement and joint letter that satisfactorily address the Court's concerns about the Settlement Agreement's overbroad non-disparagement provision, overbroad release, Plaintiff's range of possible recovery, and attorneys' fees.

Dated: Central Islip, New York
 February 24, 2023

S O   O R D E R E D:

/s/ *James M. Wicks*
    JAMES M. WICKS
United States Magistrate Judge